O’Neall, J.
In this case it will be useful to precede the consideration of the several questions involved in it, by a summary statement of the facts on which the claims now presented to the Court are predicated.
Humphrey Summers, by his last will and testament, bequeathed to his daughter, Mary Summers, one third part of his slaves. This share was after his death, and conformably to the provisions of the will, duly ascertained ; and upon her marriage with David. Deas, Esq., he received, and reduced into possession, the slaves constituting her share. He some years after, to secure the payment of a large debt, mortgaged to the President, Directors, and Company of the State Bank, fifty-eight slaves, including thirty-six of those received by him on account of his wife’s legacy, under her father’s will. He subsequently made, and executed his own will, constituting his wife the sole legatee, and executrix, and died in the year 1822. His widow proved his will, and qualified as executrix ; and the President, Directors, and Company of the State Bank, having seized the mortgaged slaves, for the purpose of foreclosing their mortgage, by a sale, Mrs. Deas, believing that under her father’s will, she had an estate, to her sole and separate use, for fife, with remainder to her children, in the thirty-six slaves, derived from his estate, on the 15th August, 1822, filed her bill in the Court of Equity, for an injunction to restrain the President, Directors, and Company of the State Bank, from proceeding under their mortgage, against the said slaves. To this bill, they answered, styling her “ widow, and executrix of David Deas, deceased and contended, that under the will of her father, she took an absolute estate, which, by virtue of her marriage, vested in her husband : and they claimed that the whole of the slaves mortgaged to them should be sold by the decree of the Court, to foreclose their mortgage. Upon the hearing of the cause, the Circuit Court, in March, 1823, by its decree, decided that Mrs. Deas had a life estate, only, in the *287 thirty-six slaves, and that her children were infilled in remainder ; but that her life estate was vested in the Bank, by her husband’s mortgage : and it was ordered, and decreed, that the mortgage should-be foreclosed by a sale, of the twenty-two slaves, which were admitted to be the property of David Deas, absolutely, and of the life estate of Mrs. Deas, in the thirty.six. On an appeal, on the part of the Bank, this decree was affirmed, by the then Court of Appeals, in April, 1823 ; and the decree was, subsequently, fully executed, by a sale of the twenty-two slaves, and by Mrs. Deas’ purchase from the Bank of her own life estate in the thirty-six.
She afterwards contracted debts to Henry Gourdine, and M’Cartney & Gordon, for necessaries, as is alleged, such as blankets, and clothing, for the use of the slaves held by her under her father’s will.
•' The executors of Manigault, judgment creditors of David Deas, in February, 1824, filed a bill in the Court of Equity, against Mrs. .Deas, as executrix of David Deas, for an account of the assets of his estate, and the payment of his debts; and her answer having come in, the matters of account were referred to the master, who was directed to advertise for the creditors of David Deas. In the progress of this suit, Mrs. Deas accounted before the master for the admitted assets of the estate ; and was found to be largely in arrear to it: and she was also required by the complainants to account for the slaves held by her under her father’s will, as part of the assets of her testator, David Deas, which she refused to do, on the ground that these slaves were not the property of David Deas, nor liable for his debts; and her objection was sustained by the master. Pending this litigation, Mrs. Deas died, and administration, de bonis non, with the will annexed, of the estate of David Deas, was granted to one of the complainants,- Charles I. Manigault, who was ' also one of the executors of Manigault; and administration of the estate of Mrs. Deas, was committed to the defendant, Charles R. Holmes. The suit was, in September, 1827, revived by Charles I. -Manigault, as administrator of David Deas, against Charles R. . Holmes, as administrator of Mary Deas ; and the cause came up for hearing, upon exceptions to the master’s report, in January, 1828, before Thompson, Chancellor, who decided, that the slaves held by Mrs. Deas, under her father’s will, were her property for life, and, after her death, the property of her children. On appeal, - the Court of Appeals, in March, 1829, reversed the decree of the Chancellor, and decided, that under her father’s will, Mrs. Deas took an absolute estate in the slaves bequeathed to her; and that by *288 mar*ta' fights of her husband, they had vested in him-: and they ordered, and decreed, that these slaves should be delivered to, and sold by the complainant, as administrator, and the proceeds admin. istered by him. "
Under this decree, all the slaves acquired by Mrs. Deas, from her father’s estate, including the thirty-six mortgaged to the State Bank, have been sold, and the proceeds in part administered ; but the proceeds of the sale of the thirty-six are now attempted to be subjected to several claims, hostile to that of the complainants;-
These are, First — The creditors of Mary Deas, for necessaries furnished for the use of the slaves.
Second — Pier children..
Third- — The State Bank, under the mortgage of David Deas, to the President, Directors, and Company.
Out of these claims, which were, by various proceedings, submitted to the Circuit Court, in May, 1829, and on the several appeals from the decree, in relation to them, made by the Chancellor, which disallows the claims of the creditors, and of the children of Mrs.- Deas, but sustains that of the State Bank, the following questions have arisen for the consideration and judgment of this Court. First, could Mrs. Deas hold, against all claimants, the thirty-six slaves, purchased by her, under her decree against the State Bank? Second-, can the proceeds of the sale of the slaves be made liable to the demands of her creditors, for necessary' supplies for the slaves furnished to her? Third, regarding her children as now in possession of the thirty-six slaves, can they retain the possession from the complainants ? Fourth, are the President, Directors, and Company of the State Bank, estopped from claiming under their mortgage, by the decree of the Court of Equity, in the suit of Mrs. Deas against them ? Fifth, can they file a bill to review the decree in that suit, for error in law ? I will consider, as briefly as I can, these several questions, in the order in which they have been stated.
First. The statement of the facts, already given, would induce every one, not acquainted with the hidden difficulties, which start out of an apparently plain legal question:, to say, that Mrs. Deas could only have a life estate in the slaves by her purchase from the State Bank. This was all she bought, and all that was-sold ;■ but, as David Deas had conveyed the whole of his estate in the slaves, to the President, Directors, and Company of the State Bank, it is argued, that although they are estopped by the- decree, and the sale to Mrs. Deas, from recovering against her, yet no other person' can recover then*.
*289 All the consequences of this argument will be considered in the •sequel; but at present, I propose only to shew, that it cannot have the effect to vest the property in Mrs. Deas. She was the executrix of David Deas ; and, by operation of law, all his rights, in action, and in possession, vested in her. She was the legal owner of his property; and this legal estate she held for the payment of his debts and legacies. If one creditor failed to make the property in her hands liable for his debt, another, not a party to that suit, was not concluded by it; but might, by suit, subject it to the payment of his debt. Her possession, therefore, could be in no other character than as executrix, at least as against the creditors of David Deas. Upon her death, the administrator, de bonis non, succeeded to her rights as executrix, and was intitled to the possession. Her administrator could not say, that it was her property by virtue of a purchase under the decree; for that, at most, would only shew a right to an estate during her life. Neither would the mortgage to the Bank avail her administrator; for the administrator, de bonis non, of David Deas, as between him and Mrs. Deas’ administrator, could shew the decree of foreclosure, as a legal extinguishment of the mortgage. The complainant then, in a suit against Mrs. Deas’ administrator, for the recovery of the thirty-six slaves, would only have to shew, as he has already done in this case, that by the will of Humphrey Summers, she took an absolute estate in the slaves bequeathed to her, which, by the marital rights, vested in the husband, and his legal title to the property, as administrator, would be complete. Indeed, it would not be necessary for him to do more than to shew, that David Deas had possession of the slaves, and that Mrs. Mary Deas succeeded to his possession, as his executrix. She, or her administrator, would be estopped from denying the title of her testator ; or, at most, she, or her administrator, could only he permitted to shew a derivative title from him, and consistent with his. She could not, by operation of law alone, acquire a title adverse to his.
The second question is one of less difficulty than the first. It does not appear, that these contracts were ever made with Mrs. Deas, as executrix; and it would not be going too far to say, that it is manifest they were not. For after the decree in the suit of Mrs. Deas against the State Bank, the estate of David Deas was regarded as hopelessly insolvent. Credit was given to her on the faith of the property in her possession, but it was on her individual, and not on her representative credit. She was the apparent owner of a large estate, and out of it her creditors, very naturally, ex- *290 Pec*'e<^ ^er to mE,be payment. That she has turned out not to be the owner, and thus defeated their reasonable expectations, is the misfortune of her creditors ; but it is the common misfortune of every one> wh° credits another, supposing him able to pay, when in fact he is not. Conceding, however, to her creditors, that their contracts were made with her, as executrix of David Deas, their case will not be improved by the concession. As a general rule, the income of the estate is the fund for current expences. This fund, in the hands of the executrix, is that to which the creditor may have the right to look for payment; and in some cases, he may have the aid of the Court to make it available to him. But before he could make a fund, out of the hands of the executrix, or the capital of the estate, liable, he must shew ; first, the necessity of the debt for the trust estate ; secondly, that the executrix has no funds of the estate in her hands; and thirdly, her insolvency. These three positions require neither argument, nor illustration, to prove them. They are the result of the adjudications of this Court, in the cases of Boggs v. Reid, Smith and Brown v. Killingsworth, Guerry v. Capers, and in that of Henshaw v. Administrator of Freer, decided at Charleston, in April, 1828.* In the claim now made by Mrs. Deas’ creditors, the second prerequisite to its allowance can not be made out; for according to the master’s report, she is largely in arrear to her testator’s estate: The creditors must therefore look to her estate for payment; and if it is unable to pay, the loss must fall on them, and not on the estate of David Deas.
vide ante, p' '
Third. Assuming, as has been done in the argument, that the children of Mrs. Mary Deas ought not to be prejudiced by the sale of the thirty-six slaves, in this suit, to which they were not formally parties, and regarding them as now in possession, and this as a suit by the complainant, as administrator of David Deas, for the recovery of the slaves, I propose to consider, whether he would be intitled to recover. To solve an apparently difficult question, it is generally best accomplished, by resolving it into its simplest elements. To intitle the administrator of David Deas to recover his property, it would be, prima facie, enough for him to prove the possession by the deceased, in his life time, and a conversion, or detention, either before, or after, his death. This would cast upon the defendants, the proof of a better title. How could this be accomplished by the children of Mrs. Mary Deas 1 They could not rely on her posses, sion, to acquire a title by the statute of limitations, for two reasons : *291 first, it would be referred to her title as executrix, and could not, therefore, raise the presumption of a title adverse to her testator ; and second, her title under him, both as executrix, and by purchase from the Bank, terminated at her death. They cannot set up'the decree of the Court of Equity, in the suit of Mrs. Deas against the Bank, as evidence of their title ; for that part of the decree, which decides that they were intitled to the remainder, is extra-judicial, being on the rights of parties, the children of Mrs. Deas, not then before the Court.
In 1st Pothier on Obligations, by Evans, 560, it is said, “ the judgment, as to all who were not parties to it, either by themselves, or those under whom they claim, is res inter alios judicata, and cannot be opposed, either by, or against them ; and this is the case, although the question is the same, to be decided upon the same principles, and depending upon the same facts.” In 1 Starkie on Evi. dence, 195, it is stated to be a general rule, “that a verdict shall not be used as evidence against a man. where the opposite verdict would not have been evidence for him.” In 1 Philips on Evidence, 249, the general rule is stated to be, “ that a verdict is only evidence between the same parties, or between such as claim under the same parties; and that a stranger cannot give a verdict in evidence against one, who was a party to the former suit.” The result of the rules stated by these great elementary writers, is, that a person, not a party to the former suit, cannot give the judgment in evidence, to estop the other party from a recovery in a subsequent suit against him. The complainant may, and must, be regarded as a party, to the suit between Mrs. Deas and the Bank; but her children, not being parties to that suit, cannot now, by that decree, es. top him from his recovery against them. If the decree had been against their claim, it is obvious, that, not being parties, they' would not have been in any way affected by it. They would have had the right to claim a re-adjudication of the same matter; and the decree could not have been “ opposed” by the complainant, as an estoppel against them. It is true, that if they could, by any process of reasoning, shew, that they were privies in estate with the complainant, in that suit, then they would be intitled to the benefit of the decree. If, for example, they had been remaindermen in fact, as they were supposed to be, it might have bound them, and they might have claimed under it. But by the decision of the Court of Appeals in this case, which receives my entire concurrence, they have been decided to have no estate whatever in the slaves, bequeathed by the will of Humphrey Summers to their mo- *292 ^er" They, therefore, fail in connecting themselves in estate witlr the complainant in that case, and are of necessity strangers to the decree; and are neither injured, nor benefited by it.
It is said, however, that they may shew a title out of David Deas, and thus defeat a recovery by his administrator. This is true, but in shewing title out of him, they rely solely on the mortgage to the State Bank. The legal effect of this was to vest in the Bank his whole estate in the slaves mortgaged ; but although the legal estate in the slaves was thus vested in the Bank, yet like other legal estates, for legal purposes,- it may be shewn, to be defeated by a satisfaction of the thing for which it was vested, or that its legal effect has ceased by an express adjudication. In the case of a levy under execution, the law vests the personal property levied on, in the sheriff, for the purposes of sale, and satisfaction of the execution ; but if the debt is paid, or the execution is set aside by the judgment of the Court from which it issues, the property is revested in the defendant, in the execution. So in the case of a mortgage of personal property, the law vests the legal estate in the mortgagee, for the payment of his debtbut so soon as- the debt is paid, generally the property revests in the mortgagoz-. If the mort.gagee, instead of relying on his legal estate, treats his mortgage as a lien, or incumbrance on the property, and claims to foreclose it by the judgment and decree of a Court of Equity, the decree of that Court, giving effect to the lien, according to its view of its extent, is a legal satisfaction, release, or destruction of the mortgage itself. Let us apply these principles to the defence made by the children of Mrs. Deas. They set up the mortgage to the Bank, which thus becomes a part of their title to the possession; and they must, therefore, be regarded as claiming under it. The complainant, as administrator of David Deas, has the right to reply to it any thing, which would be competent between the Bank and him. Standing in the place of Mrs. Deas, who was, in the suit between her and the Bank, the executrix of David Deas, he has the right to introduce the decree in that case, and to shew, that it had been executed, by the sale ordered by it. The effect of this is a payment, release, or destruction of the mortgage, by the judgment of a Court of competent jurisdiction. In other words, it is the judg. ment of the Court of Equity, that David Deas mortgaged to the State Bank, thirty-six slaves, for the life of his wife, and that they should be sold for that term, to foreclose the mortgage. This decree has been executed, and thus both the lien, and the legal estate, created by the mortgage, are ended, and determined. With the *293 reasons of that decree we have nothing to do. They may be bad; and indeed the decree is even against the letter of the mortgage, and its legal effect. But justice is represented to be blind, and the propriety of the representation can never be better illustrated than by the case before us. For the sake of the country, and the ending of litigation, it is the duty of the ministers of the law to shut their eyes to the manifest error in the decree, in the case of Mrs. Deas and the State Bank; and to give effect to a legal and technical rule, against both the words of the decree, and what ought to have been the legal operation of the mortgage.
Fourth. In discussing the previous question, I have necessarily touched upon the fourth, and have, in some degree, indicated the conclusion which may be anticipated upon it. Before, however, I proceed to consider it in detail, I may remark, that I feel the jus. tice of this case to be with the Bank ; and were I at liberty to in. dulge the feeling of right, I should have no hesitation in saying, that the mortgage ought to be satisfied. But the law, not abstract justice, is that which we are to administer ; and if, according to its rules, the Bank cannot recover, it is a duty paramount to dismiss the claim.
It may be laid down, as a general rule, that a direct final judg. ment of a Court of competent jurisdiction, on the same subject matter, between the same parties, and privies in law, or estate, is conclusive, and cannot be re-examined in a subsequent original action in the same, or any other Court. 1 Phil. Ev. 242, 3, 5, 6; 1 Stark Ev. 198, 202, 5; 1 Poth. on Obl. by Evans, 552, 4, 6, 7. In the application of this rule to the case before us, it is necessary to look into, and examine, the case of Mary Deas against the State Bank. It is conceded by all concerned, that the decree was a direct, and final judgment, on the point in controversy. But it is said, "that the estate in the slaves, after Mrs. Deas’ death, was not the subject matter of that decision ; in other words, that the decision then made as to the remainder, was extra-judicial, being on the rights of persons, not parties. This is true, to its full extent, and the judgment, as to the rights of the remaindermen, is absolutely void ; but still this cannot benefit the Bank. The contest between the Bank and Mrs. Mary Deas, was two-fold: first, whether they had any right to foreclose their mortgage at all; and second, if they had, then to what extent. Each of these points was decided, and the present application is to extend the right of foreclosure, beyond what the Court then decided that the Bank was in-titled to. It is now calling on this Court to decide, that the mort *294 gage conveyed to them an absolute estate, when the former decree decided, that it conveyed only an estate for the life of Mrs. Deas : so that it is manifest, that the subject matter, now in controversy, is precisely the same as it was in that case.
Are the parties the same, in law, and estate ? If the complainant is a stranger to that suit, then, certainly, he can have no benefit from the decree. In order to test this question, it is necessary to see in what character Mrs. Deas, the complainant in that suit, was regarded. If, in law, she was to be regarded as in Court, in her private, and not in her representative character, then I should con. cede, that the complainant, Manigault, would fail in establishing his identity in law, and estate, with her. She filed her bill, it is true, as the legatee, under the will of Humphrey Summers; buf: she was at the same time the executrix of David Deas, and, therefore, the legal representative of his rights. To enable the Court to decide on the extent of them, it was necessary, as his executrix, that she should be a party. Accordingly, the President, Directors, and Company of the State Bank, treat, and style her, in their answer, as C( executrix of David Deas, deceased and pray a foreclosure of their mortgage, not only of the slaves claimed by her, as Humphrey Summers’ legatee, but also of the slaves conceded to belong to her testator. And the Court decreed, not only a sale of the slaves conceded to belong to her testator, but also of her life estate in the slaves in dispute, as belonging to him, and passing under his mortgage to the Bank. This is conclusive that she stood before the Court in the two-fold character of legatee under Humphrey Summers’ will, and executrix of David Deas. “ It is not essential,” says Mr. Starkie, in his Treatise on Evidence, vol. 1, p. 194, “ that either the parties, or the form of action, should be precisely the same, if they are substantially the same.” And again, " so a record is evidence against one who might have been a party to it, for he cannot complain of the want of those advantages, which he has voluntarily renounced.” Ib. 194, 5. Mrs. Deas, as executrix, could never have questioned that decree against the Bank, for in substance, if not in form, she was a party to it; and if she could not have questioned it, it follows, that the Bank could not have objected to it, as evidence in her favor. Suppose the President, Directors, and Company, relying on the legal estate conveyed by the mortgage to them, had brought trover against Mrs. Deas, for the slaves, and had recovered the value of her life estate. In the suit so brought, she could not have been sued as executrix, but must have been treated, and considered, in it, as in her private, and not *295 her representative capacity. Could they have maintained a second action for the same cause against her, or her successor, the administrator de bonis non 1 It is clear that they could not; for they have recovered, against the legal representative of the rights of David- Deas, to the full extent of what the law held to be their legal right. All the questions, necessary to the determination of that right, were involved in the issue made, and they cannot be again re-agitated.
Let us put another case. Suppose the President, Directors, and Company of the State Bank, had sued Mrs. Deas, as executrix of David Deas, on his bond, and she had pleaded plene administravit, praeter a given sum, arising from assets, other than the slaves in dispute ; and that the plea had been confessed by the plaintiffs, or found for her: could they, in a subsequent action against her, have made the slaves liable as assets to be administered ? I am fortu. nately relieved from answering the question by any reasoning of my own, by the case of M’Dowall v. Branham, 2 N. & M. 572, in which it was held, that slaves in the hands of an administratix, at the time when her plea of plene administravit was filed, and judgment rendered upon it, were not liable to the plaintiff’s judgment against assets guando acciderint.
The decree in the case of Mrs. Deas against the State Bank, would, as between her, as legatee under Humphrey Summers’ will, and as executrix of David Deas, and the Bank, be conclusive. How stands the case between the complainant Manigault and the Bank 1 Is he the same party in law, and estate, as Mrs. Deas, executrix of David Deas, deceased 1 It cannot admit of a ques. tion that he is. He, on her death, and the grant of administration to him, of David Deas’ estate, succeeded to all the rights of that testator, which she had not administered. As to whatever belonged to the testator, she, and the complainant, are identical in law. One is the executrix in fact, and in law ; the other is the law’s substitute for her, after her death. Whatever would conclude Mrs. Deas, as executrix, will conclude him as administrator. Whatever, as against her, as executrix, would conclude others, must conclude them against him.
The slaves in dispute, were administered by Mrs. Deas, for her life; and at her death they were undisposed of, and unadministered beyond it: and of course, they belong to her substitute, as executrix of David Deas, his administrator de bonis non. They have according to law, that is according to an adjudication of a Court of competent jurisdiction, in a suit between the executrix and the *296 ®an^’ been administered, so far as to afford to the President, Directors, and Company, all the benefit of their lien by mortgage, which that decision admitted them to have; and I conclude, there. fore, that the Bank is now estopped, by the decree in that case, from setting up their mortgage against the slaves, in the hands of the administrator de bonis non. This conclusion receives greater force from the fact, that it does not render the situation of the Bank worse, or that of the other creditors better, than it was in the life time of Mrs. Deas. In her life time, the President, Directors, and Company of the State Bank, did not pretend, that they were not concluded from attempting to make the slaves liable to their claim. The other creditors could, at any time, have made them liable to these debts, either by the suit in Equity, which Manigault’s execu. tors instituted ; or by actions at law, in which she must have pleaded pleno administramt praeter, and they could have replied assets ultra, and on this issue have made them liable. The effect of Manigault’s administration, and of this decision, is to leave all parties exactly on the footing which they occupied, or might have occupied, in Mrs. Deas’ life time, as to the property of her testator.
Fifth. The fifth question requires neither argument nor illustration. In the case of Perkins v. Lang, reported in a note, 1 M’C. Ch. 30, 31, it was decided, that a bill of review will lie, only where new matter has been discovered since the decree, and of which the party could not have had the benefit in the first instance, making a new case, and one proper for equity jurisdiction. In the case of Haskell v. Raoul, 1 M’C. Ch. 30, the Court of Appeals decided, that a bill of review will not lie for error in law apparent on the face of the decree. This is a point regarded as settled, and both policy, and the safety of suitors, require, that it should not be open for argument.
The decree of Chancellor De Sattssuee, dismissing the claims of Henry Gourdine, M’Cartney So Gordon, and the children of Mrs. Deas, is affirmed; but so much of his decree as sustains the claim of the State Bank, is reversed, and the petition of the President, Directors, and Company, of that Bank, dismissed : and the administrator of David Deas, is directed to administer the assets of his estate, conformably to the decree of the Court of Appeals, heretofore pronounced in this cause.

 Vide post, for a report of this case.